May it please the Court, I'm Mike Moberly of the Law Offices of Hozobin & Moberly, Counsel for Appellant Greenpeace USA. I'd like to start today by discussing first what constitutes a threatened tort for purposes of triggering subject matter jurisdiction towards... I'm sorry, that constitutes a what? That constitutes a jurisdiction for the court to which it can then seek obtaining a preliminary injunction. Next, I'd like to discuss the District Court's application of the wrong legal standard in granting the preliminary injunction below. And finally, discuss the various incorrect factual findings made by the District Court. Can I ask you one thing before you get onto that? I personally take it there is jurisdiction here, so I'm primarily focused on the issue of what Greenpeace USA did. Correct. So I want to begin by understanding properly the corporate, or whatever they are, structure of these various entities. As I understand it, there is, I'll call it the mother entity. And what is that called? Greenpeace International is a Dutch corporation, Stichting Greenpeace Council. They're the holder of the Greenpeace logo. Okay, and who owns that? I don't know exactly. I believe it is still owned by Greenpeace International or Stichting. Does Greenpeace USA have any ownership in that? I know it has a license or whatever you call it, but it doesn't have any ownership per se in Greenpeace International. No, it's guided by a license. It's discussed in detail at ER 147. Mr. Tom Wetterer, counsel for Greenpeace USA, explained the documents that guide the relationship. It is nothing like a subsidiary relationship. It is literally a license. Okay, and Greenpeace USA is what kind of entity? A non-profit. Non-profit. 501c3, I think. Corporation. What is it? 501c3? 501c3. It's associated with Greenpeace Fund, which is a C4, which does solely the funding. Now, C3 can't be involved in political activities, so you've got to turn around. Okay, sorry. All right, but it is a corporation, right? And who are its, you know, I don't think it depends on who you incorporated and so on, but is it a mutual benefit corporation? Is it a public benefit? What kind of entity is it? I believe it's non-profit. Right, but I mean within that umbrella, what kind is it? I don't have that answer. It's not in the record below. It's not something that I'm personally familiar with. Okay, but is any portion of that owned by the Greenpeace International? No. It is not. So you have two separate entities. They have policies that, in effect, guide, but it is not controlled by it, like you would have if you had, say, a control of a board of directors or something like that. No, I think, again, the 152 were discussed by Mr. Wetterer, the ER 152. There are annual meetings. There is, for lack of a better term, a tithe that's expected, except that that is between Greenpeace Fund and Greenpeace International. Is there anything in the record that shows that Greenpeace International or Greenpeace New Zealand or any of the other entities involved in other instances said to Greenpeace USA, unless you do X to stop Shell, we won't give you X dollars? Which party telling which? Well, let's take Greenpeace International. Does Greenpeace International, is there anything in the record that says Greenpeace International, Greenpeace USA, unless you do X or Y to Shell, we won't give you whatever dollars? No, I think, in fact, there was a discussion about the relationship, and it said that they're not always in agreement. While they have core principles, which they hold in common, they often differ on issues of importance, depending on their region. They also differ in opinion on the tactics used. Okay, and is there anything in the record that shows that Greenpeace USA approved of or sponsored actions by Greenpeace New Zealand or Greenpeace Finland? No, in fact, there was a specific finding to the contrary, that there was no evidence of that in the record by Judge Gleason. So, for our purposes, for our purposes, is it fair to say, and I'll ask opposing counsel if he agrees or disagrees, that the record shows no evidence of control of Greenpeace USA by any, and I'm going to use a blanket term, the other Greenpeace entities. Is that a fair statement? Correct. In fact, I think, on cross, Mr. Wetterer was questioned about just those things at ER-175. He specifically said that that was not, in fact, the case. And is it also true, and then I'll make the rest of what you say, but is it also true that in order for the district judge to grant a summary judgment here, he would have had, he or she would have had to have evidence that Greenpeace USA, as opposed to somebody else, had shown a pattern of violence against Shell in order to justify an injunction? That's our position. The plaintiffs, they've been Shell Offshore, Shell Gulf of Mexico, then Shell Oil Company, and now back to the original two. They're the master of their pleadings. They chose the parties that they chose unwillingly to bring to court. That is Greenpeace USA, for whatever reasons, either their lack of ability to serve, although they have personally served papers around the country on every Greenpeace entity, is my understanding. The only party to this action right now is Greenpeace USA. From your perspective, they serve the wrong party, more or less. Whether or not we're properly before the court is different from the question. I don't mean that there's not jurisdiction, but rather if they were looking for somebody to charge that certain violent actions have been taken, they serve the wrong party. Absolutely, if there's no connection between those actions and the defendant before the court. In fact, that's precisely why I wanted to discuss what constitutes a threat. There needs to be something that the defendant has done in order to subject itself to the court's jurisdiction. And all of the allegations in the complaint, whether there's an Admiralty allegation, I believe that those were, we forwarded those to the court, and they were subject to the court's jurisdiction. And I would submit to the court to look at the original dockets, the first verified complaint, which had been amended to change the plaintiffs and tidy up some language, but it maintained the causes of action. And then after the preliminary injunction hearing, there was a second amended complaint, which switched it back to the current plaintiffs. I went back and looked at ER 175, and I wasn't exactly sure what you were talking about. Which was, what was my site to that in response to the question? Well, you said ER 175, and I looked it up. I thought the question was, is there any evidence of Greenpeace involvement in these actions? And you said, no, Mr. Wetterer specifically denied it. Look at ER 175. He does deny something there, but I don't think it's that thing. These things are called priority campaigns in the language of the organization, so what are their most important things? Why don't you start off by telling me what it is I'm looking for in 175, and then you can work your way back and explain to me what it means. I most likely was mistaken due to my note. I wrote on cross, and maybe my site is off. Ah, okay, so it's not on 175. No. That explains a lot, because I didn't find it. He does say no to something, and I tried to figure out what the no was on the prior page, and it didn't seem to be the same thing, but... Whether or not this stop shell or arctic drilling campaign was a priority campaign for Greenpeace USA, and it's not. It's represented in their annual reports. There's discussion at the preliminary... But you don't have a site where he says it, in answer to Judge Smith's questions, where he said, and he denies it on page 175. He doesn't deny it there, and he must deny it somewhere else. You don't have that page. The question, again, to which I was answering? Well, I'm trying to remember which part we're talking about. Whether he denied that Greenpeace USA had participated in any of the activities that are alleged by shell, as opposed to other entities that are not part of Greenpeace USA. She was pretty good. There is a site... It was on the cross-examination by the plaintiffs. Well, you want to reserve that, and maybe give us a time of rebuttal? You can give us a page number? Two main points, again, that I... There are two rules. One of them is, it's good to know the record, and the more important rule, it's always good to know the record correctly, you know, have the right page in the record. It's not so good giving the wrong page. Understood, and it's cost me dearly. Sorry. Well, I'm not trying to coerce you. I would just like to see where it is. I don't know whether you would listen to what the Chief Judge said. He was suggesting you might want to reserve a little of your time to think it through. You can do whatever you want, but you've got three minutes and 23 seconds left. I will take that as a strong hint. Okay, thank you. We'll hear from the other side. Good afternoon, Your Honor. Jeff Lepo, representing the Shell plaintiffs' appellees in this case. I'm going to direct my attention to the issue of the merits of the preliminary injunction and the abuse of discretion standard. Before we do that, Mr. Lepo, would you help me with something? Admittedly, I heard this in the lay and business press, but I read that Shell announced that it was suspending its Alaskan drilling operations until the summer of 2013. I don't know whether it's the same operation that we're dealing with here, but if it is, does that have any impact on our jurisdiction for purposes of considering this appeal? So, Your Honor, to the best of my knowledge, as of this morning, Shell is out in the Chukchi and the Beaufort Sea drilling. Okay, so what I read about is some other place, some other situation. Well, the situation, and this is, of course, off record, but I want to answer your question, is that Shell is not drilling into oil bearing portions of the reservoirs on its leases, and it is reserving until next year because its exploration plan is multiyear to do that. But it is out there drilling initial wells down to the level just before you would get into the oil bearing zone. I understand. I appreciate that explanation. So, basically, this involved a different kind of drilling, not that there's no drilling. It's incomplete. Yeah, that's right. There was something like a big dome or something that fell off and you had to recover it or something. Is that the same incident? The real issue there is there was a barge that was required to be permitted as part of the oil spill response. That barge wasn't able to be certified. In connection with certifying it, there was damage to a piece of equipment, a very large piece of equipment, an important piece of equipment. And so they're not going to drill into the oil bearing zones because they don't have that piece of equipment, but they are going to drill as many of these wells down to that point this year, and they are out there actively doing so. Thank you for answering that. You're welcome, Your Honor. So there are jurisdictional issues that have been raised. It's my intent to leave those to the briefing unless Your Honor has questions about case or controversy or about maritime jurisdiction, and to instead turn to the issue of the merits of the preliminary injunction that was entered based on the standard of review that's highly deferential, abusive discretion. I'm sure this Court's aware of it, just stated for purposes of setting up the argument that the Court applies a two-part test in reviewing a preliminary injunction. I don't want to get in the way of what you want to argue, but I was interested in the issue that Judge Smith was pursuing with opposing counsel, and that is whether you've got the right party here being enjoined, whether they really had any involvement. I think that was the gist of the conversation. So at some point, if you could talk to that, that would be helpful. Absolutely. And in particular, it seemed to me that the bulk of your allegations, at least as seen at the red brief at two and three, dealt with the testimony of Greenpeace USA's general counsel. That seemed to be all, at least that's all I could find that tied to Greenpeace USA. As you go along and talk about this, will you let me know whether I am mistaken? Sure. So there are quite a few exhibits in the record. I believe they're attachments to the declaration of Eric Pickett, and they're in the supplemental excerpts of record. I don't have the page number to provide, Your Honor, which relate to the relationship between Greenpeace International and Greenpeace USA.  Which the district court basically chose to find was not credible in most instances. That the relationship had not been properly explained or what? That's correct, Your Honor. So the exhibits which are in the record, which are documents of Greenpeace, demonstrate that it operates under what they call a one Greenpeace framework. So I think it's hard to define who controls who, but there is Greenpeace International, there are 40 offices of which Greenpeace USA is one, which are called offices of Greenpeace, national offices of Greenpeace. There's a fine web of interrelationship between the two, and in some instances there's control exerted by Greenpeace International on its national offices, and in some instances there's control the other way around. When you say control, what do you mean by that? That they can compel an action? Well, so I'll give you a specific example. Greenpeace USA has testified in a consent decree that was entered in a federal district court case in California, and which was entered as an exhibit in this case, and so testified further in this case through Mr. Wetterer, that it controls the actions of Greenpeace International and all the Greenpeace entities occurring in the United States. That Greenpeace USA does? That's correct. That no action by any Greenpeace entity can occur in the United States without the consent and approval of Greenpeace USA. Okay, the international people can't come into the jurisdiction of Greenpeace USA and do anything without their consent. That's correct, Your Honor. And that's different than saying that the international controls Greenpeace USA, is it not? That's correct. That is correct, Your Honor. Is there anything in that record that shows by anybody's testimony that what Greenpeace International says has to happen in the United States or its territories that Greenpeace USA has to do? Well, first of all, there isn't any testimony that addresses that issue, but there is a great deal of documentation, exhibits that were admitted by the court. Again, I believe they're attachments to the declaration of Eric Pickett, and they are Greenpeace International's documents itself about its relationship with its national offices. What those documents demonstrate is that there is a requirement that Greenpeace USA and other entities contribute 18% of their gross profits, their gross revenue to Greenpeace International, and there is a close relationship in which they participate with each other in strategic planning and in management. Okay, let's say all that's true. It's a little bit like a franchise in a way. Well, it's not quite a franchise. It's more like a web. Okay, call it a web. But the reality is Shell has the burden of proof here, right? Absolutely, Your Honor. And it has to show that if it's going to get an injunction against Greenpeace USA, that it has to show that Greenpeace USA has done certain things that warrant the preliminary injunction, right? It has to demonstrate a threat that's credible, concrete, particularized, imminent. Right, and what I'm struggling with, frankly, is that there are statements by a number of people in Greenpeace New Zealand and Greenpeace Finland and certain things that they've done that seem to be attributed by the district court to Greenpeace USA. I don't see the connection. And then you've got the testimony of Greenpeace USA's general counsel, and he said, by my count, six things, most of which are somewhat general, some of which are clearly protected by the First Amendment. Some things have just a puffing, basically, but there's no specific credible testimony that we, Greenpeace USA, decided to knock the ship out of the water or overturn this or whatever. What am I missing? So I think what you're missing is there's a lot more evidence in the record than just the testimony of Mr. Wetterer. What in particular would you refer me to? Again, I would refer, Your Honor, to the Eric Pickett Declaration, which is in the Supplemental Excerpts of Record. Do you have the page? He'll find it, okay, right. Pickett? Pickett, P-I-G-G-O-T-T. Okay. It really was an authentication declaration. I understand. It starts pages 220 to 246. I'm sorry, 220? 220 to 246 of the Supplemental Excerpts of Record. These are the pages that's on the bottom of 1076-something? No, those were exhibit numbers from the hearing. In the middle of the page, there's S-E-R. Oh, S-E-R, there we go, those pages. Those pages. What were the pages again? 220? 220. Okay, I got it. I'm sorry. So, actually, the Stichting Agreement is at E-R-268. I'm sorry, you referred to the Pickett Declaration, which is only two pages as best I can tell. It's not the declaration itself, Your Honor, it's the attachments. Mr. Pickett's declaration was an authentication declaration. I see. It's the documents that were attached that were then accepted as exhibits in the case. So you are now looking at 268? That's the licensing agreement, Your Honor. Okay. What else you got? Okay, but let me try and walk you through what it is that Greenpeace USA has said and done. And let's keep in mind that, first of all, the court concluded, based upon the evidence before it, and this is a review based on a deferential standard of review, so that it has to be that the findings were important. Why do lawyers do that? You know, they say this, and then they go off with little footnotes. We know what the standard is. Just say what you've got to say. All right, Your Honor. Thank you. You're going to get lost. We're going to lose us. We know what the standard is. Fair enough. How many times do you think three of us have reviewed findings of fact? Many, many, many times. You know, more times than you can imagine. Thank you, Your Honor. So just say it. Okay. The campaign in which USA is engaged in and which they have very publicly announced is labeled Stop Shell. That is a threat. Oh, wait a minute. Wait, wait, wait, wait. I know a little bit about the First Amendment. And the First Amendment doesn't say that to state Stop Shell is a threat. It can be. Well, you know. It all depends on the context, Your Honor. You could write a play about that. You could. I mean, you could. I mean, that could be a musical. You could have dancers. You could have all kinds of things, dancing shells across the stage. I mean. But that's not what happened here, Your Honor. It's part of the book of Shell. But that's not what happened here, right? Okay. The Stop Shell campaign is a campaign in which Greenpeace International, acting together with Greenpeace USA and its other entities, has said. But you sued Greenpeace USA. Yes, we did. And here's the reason. I get the point that if you had sued all of these entities and all of their actions were involved, I think you might have a whole lot better case. But what I'm struggling with here, frankly, Counsel, is that Greenpeace USA has said a lot of things. And they may have been wise or they may have been foolish, but whether they rise to the level of what you need to uphold a preliminary injunction is another matter. And that's why I'm hoping you're going to be able to help me to say, you know, you missed this, Judge. If you look on this page, Greenpeace USA did that. They specifically did that. They just talked. They did something. That's what I want to hear about. All right. Well, first of all, I think that it is, in fact, correct that statements of a party can be sufficient threats. If you look at the restatement of second of torts, it's adequate. Certain kinds of statements. Certain kinds of statements, Your Honor. If I look at you, no, no, let's not say that. There's a fictitious person here and I say, I hate you, I'm going to kill you, and I pick up a gun. Don't do anything. That's clearly a threat is actionable. But on the other hand, a statement, particularly a political type of statement, is a different matter. Here's the situation, though. You have to take into account all the facts, and part of the facts here about Greenpeace USA are they don't make idle threats. They exist for the purpose of engaging in confrontational direct actions. Their federal tax returns, which are part of the evidence in this case, state that one of their organizational purposes is confrontational direct action. They have taken action specifically in Alaska against oil and gas interests in the past. But, counsel, you're a good lawyer. You understand this. Confrontation could be something like appearing at a hearing in Alaska that tried to oppose that. It could be, but that's not it, Your Honor. But, honestly, that's not what they do. They've branded themselves as the environmental organization that isn't just talk, that doesn't engage in just puffery, that does go out and do things, and, in fact, they do it every year. And what did Greenpeace USA do and not just talk about it? Greenpeace USA in the past has gone up to Alaska and has done exactly what was threatened here, which is they've gotten in the way. What they engage in is a risk dilemma. They put their bodies in the position where you must stop what you are doing. You must allow them to have what they seek, which is to stop your operation. Otherwise, they are at risk of being injured. So they hang themselves near a drill bit, or they put themselves between a tug and a tow, or they bob in the water between your boat, and you must stop at risk of injuring them. And they have done that. And Greenpeace USA has. Greenpeace USA has done that, and the record contains findings of prior temporary restraining orders and preliminary injunctions entered in Alaska in federal district court involving Greenpeace USA. And do you have the record side on that, please? I don't, Your Honor, but I'll be happy to submit that as a 28-J. It does exist in the record. One of them was ARCO Alaska versus Greenpeace. We want to make you happy, so you go ahead and do that. All right. There also are. Let me. I'm sorry. Go ahead. Greenpeace USA also previously boarded one of the vessels that is a support ship for Shell's operations. It was in the Gulf of Mexico. It had already been identified as one of the vessels which would be used in connection with this, and Greenpeace USA boarded it. They've admitted that in their answer to the complaint. So if Greenpeace USA has done things in the past, that that in and of itself is the basis for enjoining them from doing something in the future? No, but it contributes to the reliability of the threat that when they say, I am going to do this, and they have done it in the past, they threatened it in the past, and they've actually executed on the past, it contributes to the rationality of the court's decision and the inferences drawn from that that that's a realistic and eminent and particular threat here. And so when in New Zealand the Discoverer was boarded, this is what Greenpeace USA said. I understand what they said, but, again, I want to know what they did. If Greenpeace USA said they thought that what Greenpeace New Zealand did was a wonderful thing. That's not what they said, though, Your Honor. They said we've taken action today to stop Shell from drilling in the Arctic. Okay, were they referring in a global sense, we as part of the Greenpeace movement we've done this, or are they saying that Greenpeace USA did this? Well, it's Greenpeace USA's deputy campaign director, and they said we've taken action today. So you can't say we is not, hey, we is everybody else, but we is, you have to choose, right? So part of their argument is. It's really interesting to me to hear this argument. I used to practice business law primarily, and I am very well aware that Shell has thousands of corporate and other entities, and I have never heard a Shell representative basically disclaim the value, basically saying that these are all worthless, we should treat them as all just one entity. And I'm not saying that, Your Honor. For liability purposes and anything they say. I'm not saying that. You will never make that argument. No, no, I will never make that argument. But you're making that argument with respect to them. No, I'm not, Your Honor. I'm not. The argument here is this is a sequential campaign, a scheduled process. The logistics of this operation are things have to be brought from all over the world to the Arctic to make this happen. So they start out in March and February, and they're in New Zealand, and they're in Finland, and they're in other places. And the actions are by Greenpeace International to board and block and try to keep those things from getting there. But ultimately the point is the operation takes place in the United States, and Greenpeace USA has said, hey, we've already taken action to stop these things. We are going to stop Shell. They cannot be allowed to get there. And a series of statements like that, this will not be allowed to happen, all by Greenpeace USA. And ultimately it's all culminating in the what's going to happen in the United States. And Greenpeace USA has said, we control what Greenpeace does in the United States. Let me get to it from the other end. Let's say the injunction remains in place, and then in a few months somebody boards the platform and engages in this kind of interference. How do you tie them back to the injunction? How do you tie them back to Greenpeace? I'm not sure I understand. Greenpeace doesn't sneak around, right? When they board something, they put up a big sign that says, we boarded. So there's not a question of who they are. Greenpeace USA, Greenpeace International, Greenpeace one of these other. All of the Greenpeace entities, they count on the publicity associated with this as part of their fundraising. So they don't sneak around and do this sort of thing. They don't hang near your drill pit and let you wonder who they are. They have a big sign that says they're Greenpeace. So if it says Greenpeace, you think that's proof that it's Greenpeace USA? Not necessarily, but they also, and this is all in the evidence, in the record they blog, they write, they release press releases. They've made statements. In a sense, they're their own proof. They don't sneak around. They're not, like I said, they don't make idle threats. They say they're going to go do it, they go do it, and then they publicize the fact they've done it. This is how they raise money. This is what they exist for. And so this is not a secret operation. These are not ninjas going around doing this. They want you to know that it was them and that they succeeded. One of the things that Greenpeace USA did in 2010 was they boarded the drill ship of a company called Karen Energy that was drilling off the coast of Greenland. This wasn't at Greenpeace USA, though, was it? Yes, it was Greenpeace USA, absolutely Greenpeace USA. And Greenpeace USA's executive director in his annual report, which is in the record, states this, quote, In August, our activists evaded Danish Navy commanders and scaled Karen's exploration rig off Greenland, halting the operation. We knew that, due to very tight deadlines, even a minor delay could have a major effect. Karen didn't find oil in 2010. So this is what they do. They know that if you have a time-limited operation like there is in the Arctic and you get out there and you interfere with the operation, you hang near the drill bit, whatever it is you need to do, if you delay it enough, you scuttle the operation for the year. And that's exactly what they do, and they do it over and over again. And this year they did it to the Russians. You know, the timing of it wasn't right. Shell wasn't out there because of other delays, and instead they boarded the Russians. So, I mean, and that was Greenpeace USA. I'm sure Mr. Putin will give them due process. Actually, Mr. Putin got out his super soaker and washed them right off it. So, you know, of course the Russians are different than Shell or other companies, and so that was the situation. But this is a pattern of behavior, and it's absolutely relevant to know that they don't make idle threats. And that, you know, fine, they are entitled to free press for sure. They are entitled to disagree. But they don't go out and say, we're going to do this, and then it's not puffery. They are not bystanders. Okay. Thank you. You have about three minutes, three and a half minutes, I think, left. Three minutes and 19 seconds. First and foremost, I'd say that the actions in Russia alluded to are not in the record. I'm kind of shocked that they're given attribution to Greenpeace USA. Same thing with the Karen incidents. In fact, I believe those were specifically other entities who found themselves in a Dutch court as a result of that. As to Your Honor's earlier question about page 175, it was on direct. It was my question regarding the New Zealand boarding. And was Greenpeace USA involved in that? I'm sorry, where are you reading? Bottom of 174, ER 174. The question was about the New Zealand incident. Line? 25. 25 is Zealand. Okay. There's only one word on line 25, and that's Zealand. 22 through 25. I'll let the court review that if it feels it's an important fact. But as to whether or not this is what Greenpeace does, I think Mr. Wetterer's testimony at 161 indicated the percentage. What he says was, I already said in motion there was any action by Greenpeace New Zealand, and then on 75 he says Greenpeace USA was not involved. But none of that tells me what this refers to. This is what I was trying to find out. It was the boarding of the noble discoverer, which then prompted this litigation. Noble discoverer in New Zealand, which is detailed in the allegations in their complaint. The two points that I think are important for this court to address are, you are well-versed in applying the standards for reviewing injunctive relief granted below. The lower court here applied an incorrect standard. In addressing the first of the four winners factors, the injury in fact, the court in fact engaged in a Summers versus Earth Island Institute analysis, which is actually a standing case. And so by having satisfied the mere threshold of standing, the court then found that that indeed constituted injury in fact, or a likelihood of succeeding on the merits. That's an error in law. I believe that your honors should, despite our representations in the briefing, should review this case de novo. And also look at the unsupported facts that the court relied upon in reaching its conclusion. Well, we don't review findings of fact for substantial evidence? I believe that if they're tied together for mixed. If they're mixed. Well, but something specific as to whether or not Greenpeace USA was or was not involved, that's not a question of law, that's a question of fact. But I think that the allegations that Shell uses to support bringing Greenpeace USA into this case have to do with all these other entities and the discussions on blogs and websites. And at the very beginning of the preliminary injunction hearing, there was a considerable discussion about the weight to which the court should give those. And it appears. That's why we give deference to district courts. Things are complicated. District courts make findings. But what I heard you saying is that we need to review this de novo. We need to go, you know, that's just so contrary to. Well, I believe. Judges school. Applications. I thought the findings of fact we review, particularly when it's complicated, we review for substantial evidence, no? As applied to the application of the law to which the district court did incorrectly, that is a de novo review. But the law is fairly simple. On this question, either they are tied in or they're not tied in. Now, what happens if they are tied in, you know, then there are legal issues. But on the question of are they involved or not involved, that's a pure question of fact. I don't see where a de novo review could possibly be applicable. Well, as to the application of the applicable law in this case, if it was done incorrectly, the court can review that de novo. Absolutely. It does review that de novo. As to the irreparable harm factor, the court has recently reaffirmed a sliding scale approach in evaluating the four winters factors. And I would submit that the judge's starting assumption of irreparable harm, of it being the most extreme possibility in there being either catastrophic environmental or property damage, injury or loss of life, pushes that so far out on the extreme of what the facts in the record actually support. If you do even accept, just for argument's sake, the level of direct action taken by any Greenpeace entity or any facts that the plaintiffs point to, nothing of that nature has happened. In fact, great measures are taken so that those types of things don't happen, which is supportive. That's like the argument in the last case where the question is, well, it hasn't happened yet. But here we have findings. I mean, we have actual findings by a district judge. It's a sensitive matter. It was, I'm sure, caused some disdain to be on the same docket as the other appellee. Their principles and philosophies are completely- Well, I wasn't saying there's any connection, except that it seems like the same argument. The fact that it hasn't happened yet. I mean, here we have findings by a district judge. Well, the likelihood of that extreme of irreparable harm happening is so far out there that I would say you'd have to have a stronger showing of success on the merits, for instance. Success on the merits under these facts isn't a threshold determination under Summers. People get killed on oil rigs all the time with no interference. They get killed in any variety of ways. It's within the scope of possibilities, but it's more extreme. Whereas the success on the merits on the present record, when we started with 12 causes of action and now whittled down to five, some only prospective. You know, the success on the merits given the record of Greenpeace USA's conduct, in this case as it stands, I think is highly unlikely. But, you know, that's not the review the court does at this stage. Since that likelihood is greatly diminished, I don't think that that justifies such an extreme assumption on the irreparable harm factor, when particularly there's no conduct that's in the record that would support those types of conclusions. And, yes, accidents happen. But that is purely speculative at this point. It's within the range of possibilities. But when you have an environment where accidents can be deadly, then, you know, you add an additional measure of danger. You may not intend great harm, but great harm can result. I mean, it's just the nature of the environment. Absolutely. And that sort of ties into the public interest and balance of the equities factors in that, given the protective order, Greenpeace is one of the only entities, because of its associations with other groups, Greenpeace International, which owns vessels that are capable of plying those seas, it just became impractical for there to be direct and close-up observation of these things. And so there's the result of the protective order is that not only does Shell remain unmolested up in the Arctic, but it also remains unobserved. And the public does benefit from that activity that Greenpeace offers. Okay. Thank you very much. The case to say you were sent is submitted. We are adjourned. All rise. This court for this session stands adjourned.
judges: Kozinski, Tashima, Smith